616 So.2d 268 (1993)
WEST CONSOLIDATED CO., INC., Appellee,
v.
CREOLE FISHERIES, Kenneth Terry Ferrington and James Mark Stephens, Appellants.
No. 24571-CA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1993.
*269 Johnson & Placke by Todd A. Harris, West Monroe, for appellee.
Sedric E. Banks, Monroe, Michael E. Kramer, Winnsboro, for appellants.
Before SEXTON, STEWART and WILLIAMS, JJ.
WILLIAMS, Judge.
The appellants, House Manufacturing Company, Inc. and Steve Stephens, appeal a default judgment rendered in favor of appellee, West Consolidated Company, Inc.
On appeal, appellants contend the trial court erred in finding that peremptory grounds do not exist under LSA-C.C.P. Art. 1972(1) for granting a new trial. Appellants also contend the trial court abused its discretion in failing to grant a new trial under the discretionary ground of LSA-C.C.P. Art. 1973. We affirm.

FACTS
Appellee, West Consolidated Company, Inc. (West) was the lessor of a catfish farm to appellants, Creole Fisheries, Kenneth Ferrington and James Mark Stephens until those lessees could no longer make their rental payments. Consequently, on June 13, 1991, West filed a Petition for a Writ of Sequestration Without Bond to Enforce Lien requesting that a writ of sequestration issue on, among other things, eight aerators, in order to protect its lessor's privilege for the unpaid rent. Aerators are large devices that force oxygen into fish ponds and are not easily moved from place to place. The appellant, House Manufacturing Company, Inc. (House) through its agent, appellant, Steve Stephens, had sold the aerators to Creole Fisheries by a credit sale, prior to the filing of the petition by West.
The trial court issued a writ of sequestration and the aerators in question were seized on June 14, 1991. Because of their size, the aerators were not physically removed from the leased premises, but instead were allowed to remain in the possession of Mr. Ferrington pursuant to a "keeper" agreement. The keeper agreement allowed Mr. Ferrington to hold the property as keeper until further orders from the sheriff. The keeper agreement appears in the record as part of the Writ of Sequestration/Notice of Seizure.
Thereafter, House sent its agents, Mr. Stephens and Mr. Hopper, to the fish farm to take possession of the aerators because the purchasers had only paid the down payment. Mr. Ferrington denied permission to the agents to remove the aerators. Mr. Stephens and Mr. Hopper then left the *270 premises, went to the sheriff's office, and allegedly obtained permission for the property to be released to them. They returned to Mr. Ferrington and advised him that they had permission from the sheriff to take possession of the aerators. Still not willing to release the property, Mr. Ferrington telephoned the sheriff's office and was advised that the sheriff authorized the release of the property. At that time, Mr. Ferrington allowed Mr. Stephens and Mr. Hopper to remove the aerators.
Upon learning of these events, West filed a "Supplemental and Amended Petition for Writ of Sequestration Without Bond to Enforce Lien." This amended petition was filed on July 17, 1991. House Manufacturing Company, Inc. and Steve Stephens were named as defendants and the petition specifically alleged that:
1) the defendants had removed eight aerators in violation of the sequestration order;
2) the aerators were removed without authority from petitioner;
3) House and Steve Stephens refused to return the aerators despite demand by petitioner; and
4) petitioner was incurring damages in attempting to maintain the catfish farm due to the removal of the aerators.
A second writ of sequestration was ordered. House and Mr. Stephens were served and the property was again seized, as evidenced by the "Notice of Seizure."
Mr. Stephens and House did not file an answer to the amended petition and a judgment of preliminary default was entered against them on October 10, 1991.
Counsel for West was contacted by counsel for House after the supplemental petition was filed. No extensions for time within which to answer or agreements not to take a default judgment were requested or offered to counsel for appellants. Despite continuous demands from West to Mr. Stephens, and from counsel for West to counsel for House, the aerators were not returned. On one occasion, Mr. L.A. West, owner of West Consolidated, confronted Mr. Stephens at a local fish processing plant and demanded that the aerators be returned immediately. He warned Mr. Stephens that if they were not returned, he would do any and everything in his power to legally get them back. This confrontation occurred after Mr. Stephens was served with the supplemental petition. Mr. Stephens admitted that the confrontation occurred but alleged that despite the confrontation, he did not answer the suit or contact the appellee or his attorney because Mr. Ferrington assured them that he would take care of the matter and that he had been speaking to Mr. West about trying to work everything out.
On January 6, 1992, approximately three months after the entry of the judgment of preliminary default, a hearing on the confirmation of default was held. Mr. L.A. West and Mr. Ferrington testified at the hearing. No transcript of the hearing was made. A judgment was prepared and signed on January 13, 1992, and Mr. Stephens and House were served with notice of the judgment. Mr. Stephens and House then filed a motion for new trial. A hearing on the motion was held on February 21, 1992. The trial court took the matter under advisement and subsequently denied the motion for a new trial.

DISCUSSION
Mr. Stephens and House specifically appeal the judgment denying their motion for a new trial. A judgment denying a motion for new trial is not ordinarily appealable. Holloway v. Gulf Motors, Inc., 588 So.2d 1322 (La.App. 2d Cir.1991). However, in spite of the language in their motion for appeal, the final, appealable judgment of which appellants are actually seeking review is the judgment signed January 13, 1991, confirming the preliminary default.
LSA-C.C.P. Art. 1972 sets out the mandatory grounds for granting a new trial.
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.

*271 (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
Mr. Stephens and House contend the trial court erred in refusing to grant a new trial under the mandatory grounds of LSA-C.C.P. Art. 1972(1) because the judgment is contrary to the law and the evidence. Under LSA-C.C.P. Art. 1702, a default judgment must be confirmed by sufficient evidence to establish a prima facie case. The plaintiff must prove all the essential allegations of the petition as fully as if they had been specifically denied. Laprarie v. King, 575 So.2d 921 (La.App. 2d Cir.1991), writ denied, 578 So.2d 140 (La.1991).
This default judgment recites that the trial court heard evidence and the law and evidence favored West. Absent a transcript of the confirmation hearing in the record, that judgment is presumed to have been rendered on sufficient evidence and to be correct. Holloway v. Gulf Motors, Inc., supra. This record does not contain a transcript of the confirmation hearing. When a record lacks a transcript, the inadequacy of the record is imputable to the appellant. When factual issues are involved and there is no transcript, narrative of fact or other evidence, an appellate court will apply the presumption that the trial court's judgment is supported by competent evidence. Sea Tang Fish. v. You'll See Sea Foods, 569 So.2d 992 (La.App. 1st Cir.1990), writ denied, 572 So.2d 89 (La.1991).
In the record are two exhibits introduced at the confirmation hearing of January 6, 1992. One is the invoice of the sale from House to Creole of eight paddlewheels (aerators) and the second is a group of invoices to West. However, the appellants, Mr. Stephens and House, did not supply a transcript or narrative of the facts, a defect imputable to them. Therefore, their contention that mandatory grounds exist for the granting of a new trial cannot be further evaluated by this court which presumes the default judgment is correct and is supported by competent evidence. See Sea Tang Fish., supra.
Appellants also assert that the trial court abused its discretion in failing to grant a new trial under the discretionary ground of LSA-C.C.P. Art. 1973. That statute provides:
A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law.
In Laprarie v. King, supra, this court noted that proper application of LSA-C.C.P. Art. 1973 depends on the facts and circumstances of each case. There, the defendant was served, but did not retain counsel or respond with an answer. This court stated:
When a trial judge is convinced by his examination of the facts that the judgment would result in a miscarriage of justice, a new trial should be ordered. A trial judge's determination should only be set aside in cases of manifest abuse of discretion.
Where a timely motion for new trial has been denied after the proper confirmation of a default judgment, an appellate court should be particularly cautious in examining the circumstances underlying the judgment due to the general policy consideration, weighing in the defendant's favor, that every litigant should be allowed his day in court.

One who seeks to overturn a default judgment against him must allege and prove good reasons sufficient to excuse his failure to appear and plead any defenses he might have had. Generally, post-confirmation allegations denying a plaintiff's petition are not sufficient for the granting of a new trial after a default judgment has been rendered. Appellate courts will not disturb that ruling even though the defendant may urge in his motion for a new trial that he has a meritorious defense.
Laprarie v. King, 575 So.2d at 927. (Citations omitted) (emphasis added).
*272 The record shows appellants were served. They neither consulted an attorney nor responded to the suit. Mr. Stephens acknowledged that Mr. West demanded the aerators back, but continued to rely upon the vague assertions of Mr. Ferrington. In this matter, Mr. Stephens and his supervisor, Mr. Hopper, both House employees, stated that they relied totally on the assurances of Mr. Ferrington that the matter would be worked out.
Appellants cite case authority in brief for their argument that the trial court should have granted the motion for a new trial. The cases relied upon by appellants are distinguishable from the instant case. In Lamb v. Lamb, 430 So.2d 51 (La.1983), Mrs. Lamb had been attempting to litigate her case through her attorney. The Louisiana Supreme Court found that her attorney victimized her through neglect. Mrs. Lamb was granted a new trial because the court found that Mrs. Lamb's attorney was negligent, the opposing attorney was overzealous, and the trial court was wrong in concluding Mrs. Lamb had neglected her legal affairs. In Hairston v. Monroe Gas Corp., 308 So.2d 809 (La.App. 2d Cir.1975), an appeal was taken from a default judgment without a new trial being sought. The case was reversed and remanded for trial because this Court found the failure to answer resulted from a misunderstanding between counsel. In Hardy v. Kidder, 292 So.2d 575 (La.1974), the Louisiana Supreme Court reversed the denial of a new trial in the interest of justice and on the finding that the defendant had an absolute defense, a discharge in bankruptcy, which was not pleaded through the neglect of his attorney.
In contrast, the facts of the instant case indicate Mr. Stephens and House improperly and unreasonably relied on the assurances of Mr. Ferrington that he would straighten out the dispute. Despite numerous demands over a period of approximately six months, appellants refused to return the aerators or to answer the suit. The failure of these businessmen to respond to the suit and to assert any defenses that they may have had was because of their own fault. The appellants do not contend, and the record does not support a finding that their failure to respond was because of a neglectful attorney. The mere failure to file and answer, without more, is not sufficient grounds to grant a new trial. Under the circumstances presented, we do not find this case involves a miscarriage of justice.
We find no manifest abuse of the trial court's discretion in denying appellants' new trial application.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.